EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sandra Vélez Colón y otros<br><br>Apelados<br><br>v.<br><br>Colegio de Optómetras de Puerto Rico y otros<br><br>Apelantes | Apelación<br><br>2023 TSPR 78<br><br>212 DPR ___ |

Número del Caso:  AC-2022-0059


Fecha:  23 de junio de 2023


Tribunal de Apelaciones:

     Panel V


Abogado de la parte apelante:

     Lcdo. José A. Hernández Vélez


Abogado de la parte apelada:

     Lcdo. Ramón L. Rosario Cortés


Oficina del Procurador General:

     Hon. Fernando Figueroa Santiago
     Procurador General

     Lcdo. Omar Andino Figueroa
     Subprocurador General

     Lcda. Sofía M. Cardona Rosa
     Procuradora General Auxiliar


Materia:  Derecho Constitucional - Inconstitucionalidad de la colegiación compulsoria del Colegio de Optómetras de Puerto Rico.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sandra Vélez Colón y otros

     Apelados

      v.                    AC-2022-0059

Colegio de Optómetras de Puerto Rico y otros

     Apelantes

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 23 de junio de 2023.

Nuevamente tenemos ante nuestra consideración la constitucionalidad de una medida de colegiación compulsoria que interfiere con el derecho a la libertad de asociación de una clase profesional. En específico, nos corresponde determinar si la disposición estatutaria que obliga a los optómetras a ser miembros del Colegio de Optómetras de Puerto Rico es el medio menos restrictivo para adelantar el interés apremiante del Estado de regular la práctica de esta profesión y velar por la salud del pueblo. Respondemos en la negativa, la colegiación compulsoria de los optómetras no es indispensable

para adelantar el interés del Estado y, por consiguiente, es inconstitucional.

I

El 14 de junio de 2020, la Sra. Sandra Vélez Colón, el Sr. Eric Rodríguez Benítez, el Sr. Ricardo Látimer Arzuaga, la Sra. Annette Rivera Álvarez, el Sr. Roberto Látimer y el Sr. Alejandro Díaz, presentaron una demanda contra el Colegio de Optómetras en la que alegaron que el requisito de colegiación compulsoria establecido mediante la Sección 4 de la Ley Núm. 129, infra, interfería con su derecho a la libertad de asociación. Los demandantes manifestaron que cumplían con todos los requisitos para ejercer la profesión en Puerto Rico, mas no deseaban continuar afiliados al Colegio de Optómetras. Además, indicaron que la controversia se asemejaba a la situación atendida en el caso Rodríguez Casillas *et al.* v. Colegio, infra, en cuanto a que la colegiación compulsoria no era necesaria a la luz de la existencia de una Junta Examinadora como ente regulador de la profesión. Para reforzar su postura destacaron que el Colegio no tenía facultad para autorizar la práctica de la profesión, expedir licencias o adjudicar querellas contra optómetras, sino que su autoridad se limitaba a emitir recomendaciones a la Junta Examinadora.

El 24 de julio de 2020, previo a que el Colegio presentara una alegación responsiva, los optómetras demandantes presentaron una moción de sentencia sumaria, por entender que la controversia planteada en el caso era

esencialmente de derecho. En el escrito propusieron únicamente dos hechos incontrovertidos: (1) que eran optómetras licenciados, y (2) que en Puerto Rico se les exigía ser miembros de un colegio para ejercer su profesión. A juicio de los optómetras, estos dos hechos incontrovertidos eran suficientes para establecer una interferencia con su derecho fundamental a no asociarse y, en consecuencia, decretar la inconstitucionalidad de la colegiación compulsoria.

Cónsono con este raciocinio, el 25 de agosto de 2020 el Gobierno de Puerto Rico presentó una moción de sentencia sumaria para que el foro primario dictara el remedio que en derecho procediera. El Estado propuso varios hechos adicionales relacionados a la estructura del esquema regulador de la profesión de la optometría. Cabe remarcar que, en su análisis, coligió que cualquier disposición legal que imponga un requerimiento de membresía a una entidad como condición para el ejercicio de una profesión regulada por una junta examinadora en virtud de ley, es inconstitucional conforme a lo establecido en Rodríguez Casillas *et al.* v. Colegio, infra.

El 20 de septiembre de 2020, el Colegio de Optómetras contestó la demanda y argumentó que la preeminencia del interés apremiante del Estado de proteger la salud del pueblo debía subsistir frente al derecho individual a la libertad de asociación de los profesionales. El Colegio adujo que ejercía proactivamente su facultad de investigar y corregir situaciones que pudieran afectar la salud pública.

Subsecuentemente, alegó que la Junta no podía asumir ese rol porque no poseía facultad para ello y tampoco contaba con los recursos económicos necesarios. Habida cuenta de lo anterior, aseguró que en la práctica no existía un mecanismo menos restrictivo que la colegiación compulsoria de los optómetras para adelantar el interés apremiante del Estado.

Sucesivamente, el Colegio presentó su oposición a la moción de sentencia sumaria de los demandantes y del Estado, y a su vez solicitó que se dictara sentencia sumaria a su favor. En el escrito expresó que en el caso de marras se debía dirimir si el requisito de colegiación compulsoria de los optómetras suponía algún beneficio para la sociedad y, de ser así, si ese beneficio era más importante que la intrusión con el derecho individual de los miembros de esta profesión. Con ello en mente, propuso hechos adicionales sobre su función social y la importancia de las labores que realiza. En particular, el Colegio reiteró que la Asamblea Legislativa le otorgó la facultad exclusiva de investigar proactivamente las situaciones relacionadas a la profesión que pudiesen afectar la salud pública. Catalogó esa autoridad como una especie de "police power" conferido por el Estado. Acto seguido, el Colegio explicó que existen muchas situaciones de práctica ilegal de la profesión en las que esta entidad, además de investigar, puede acudir directamente a los tribunales a solicitar un remedio. Luego de realizar un recuento de sus labores, expresó que no podría ejecutar sus facultades estatutarias sin las cuotas de sus miembros. Finalmente,

planteó que, contrario a los precedentes de este Tribunal Supremo sobre colegiación compulsoria, aquí el interés apremiante del Estado de proteger la vida y salud de las personas justificaba la "lesión mínima" al derecho a no asociarse de su matrícula.

Atendidos los escritos ante su consideración, el Tribunal de Primera Instancia dictó sentencia sumaria y determinó que la colegiación compulsoria de los optómetras era constitucional. La sentencia incluyó 16 hechos incontrovertidos relacionados a la estructura del esquema regulador de la profesión de la optometría. En su dictamen, el foro primario sostuvo que, con respecto a la profesión de la optometría el Estado tiene un interés apremiante de la más alta jerarquía en preservar la salud y la seguridad del pueblo. Así, luego de realizar un balance de intereses, concluyó que la colegiación obligatoria de los optómetras era necesaria. En la sentencia, enunció que la única consecuencia práctica de la colegiación compulsoria para los optómetras era la obligación de pagar una cuota, que los apelados nunca alegaron que era onerosa. El foro *a quo* razonó que sin el pago de esa cuota era virtualmente imposible que el Colegio pudiera operar y cumplir con las funciones públicas que se le delegaron de forma estatutaria. Bajo esa premisa, concluyó que el mecanismo impugnado, entiéndase, la colegiación compulsoria, era necesario y, por tanto, constitucional.

En desacuerdo con lo resuelto por el Tribunal de Primera Instancia, los optómetras demandantes recurrieron al Tribunal

de Apelaciones. En el recurso de apelación, alegaron que erró el foro primario al no decretar la inconstitucionalidad de la colegiación compulsoria pues existían medios menos intrusivos para lograr los fines del Estado. Argumentaron que el tribunal inferior no aplicó el escrutinio estricto y confundió la existencia de un interés apremiante con el requisito de que la colegiación fuera el medio menos intrusivo. Reiteraron que el Colegio de Optómetras tiene funciones similares al Colegio de Mecánicos, cuya colegiación compulsoria se declaró inconstitucional en Rodríguez Casillas <em>et al.</em> v. Colegio, infra. Asimismo, afirmaron que la falta de fondos públicos no puede justificar la lesión de un derecho constitucional. A modo de analogía esbozaron que bajo el fundamento de incapacidad presupuestaria el Estado podría incautar propiedad sin una justa compensación, no tendría que darle todas las comidas a un confinado y tampoco tendría que solicitar una orden de allanamiento al tribunal si no cuenta con suficiente personal. Los optómetras demandantes destacaron que la inconstitucionalidad de la colegiación compulsoria no implicaba la desaparición del Colegio, sino que este podría seguir colaborando en beneficio de la profesión. Para sustentar su argumento, mencionaron que tanto el Colegio de Abogados como el Colegio de Mecánicos siguen operando y aportando a su profesión pese a que su membresía actualmente es voluntaria. En apoyo, también expusieron que en los Estados Unidos la profesión de la optometría se ha

regulado de forma eficiente sin requisitos de afiliación obligatoria a una asociación.

Por su parte, en su alegato ante el Tribunal de Apelaciones, el Estado optó por no asumir una postura concreta sobre esta controversia. En su lugar, resumió los argumentos de las partes y concluyó que el caso de los optómetras revelaba una situación fáctica que debía ser considerada a la luz del derecho a la libertad de asociación y la jurisprudencia del Tribunal Supremo sobre el tema.

Examinado el recurso y las posturas de las partes, el Tribunal de Apelaciones dictó sentencia y revocó la determinación del Tribunal de Primera Instancia, tras concluir que el requisito de colegiación compulsoria de los optómetras era inconstitucional. El foro apelativo intermedio sostuvo que el Estado tiene un interés apremiante en regular la profesión de la optometría en Puerto Rico dado que estos profesionales atienden la salud de las personas. No obstante, concluyó que ese interés puede salvaguardarse adecuadamente mediante el ejercicio de los deberes y facultades reconocidos por ley a la Junta Examinadora, sin obligar a estos profesionales a ser miembros del Colegio. El foro intermedio razonó que, como parte de sus extensas facultades reguladoras, la Junta Examinadora posee autoridad para establecer y modificar los estándares que deben regir la práctica de la profesión de la optometría para el bienestar público. Además, expuso que para resolver la controversia no era necesario considerar la importancia de la función social

del Colegio o la situación fiscal de Puerto Rico. Afirmó que tampoco era necesario adentrarse a evaluar cuáles eran las obligaciones que la colegiación compulsoria le impone a los colegiados, sino que bastaba con reconocer que para ejercer la profesión de la optometría en Puerto Rico se requiere ser miembro de un Colegio.

Luego de presentar una reconsideración que fue denegada, el Colegio recurre ante este Tribunal Supremo mediante un recurso de apelación. Como señalamiento de error arguye que el Tribunal de Apelaciones aplicó de forma automática el precedente de esta Curia, sin tomar en consideración que en este caso la colegiación compulsoria responde al interés apremiante de proteger la salud del pueblo, lo que a su entender justifica la "lesión mínima" al derecho de los optómetras a no asociarse.

En contraposición, los optómetras apelados esbozan que el error alegado no se cometió. En suma, sostienen que, tal y como resolvió el Tribunal de Apelaciones, en este caso el interés apremiante del Estado se puede adelantar adecuadamente a través de la Junta Examinadora. Destacan que, ante el foro primario, el Gobierno solicitó que se dictara sentencia sumaria y reconoció que la colegiación compulsoria de los optómetras era inconstitucional. A juicio de los apelados, el Tribunal de Apelaciones sí realizó un análisis particularizado del esquema impugnado y el derecho aplicable. No obstante, estos entienden que aun cuando este Tribunal aceptara todos los hechos propuestos por el Colegio sobre su

importante función social, la colegiación compulsoria de los optómetras sería inconstitucional, porque no es imprescindible para adelantar los fines del Estado.

Por su parte, y sin asumir una postura concreta sobre la controversia, el Estado Libre Asociado expresa que este Tribunal debe cuestionarse si la existencia de una Junta Examinadora invalida de plano la colegiación compulsoria. En lugar de aplicar un escrutinio estricto como sostiene nuestra jurisprudencia, el Gobierno afirma que se debe auscultar la posibilidad de validar la colegiación si esta logra adelantar mejor o de forma más efectiva el interés del Estado. Por último, cuestiona si puede catalogarse como menos onerosa una medida, sin que haya constancia de que puede sustituir de manera viable y efectiva el esquema que se pretende declarar inconstitucional.

Expedido el recurso, con el beneficio de la comparecencia de las partes, procedemos a atender la controversia.

## II

### A. Libertad de asociación

La Constitución de Puerto Rico consagra de manera expresa el derecho de las personas a asociarse libremente para fines lícitos, salvo en organizaciones militares o cuasi militares. Art. II, Sec. 6, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 299. Este derecho es fundamental y está directamente relacionado con la libertad humana y la democracia. Rodríguez Casillas *et*

*al.* v. Colegio, 202 DPR 428, 433 (2019). Nuestra disposición constitucional guarda similitud con el Art. 20 de la Declaración Universal de Derechos Humanos, cuyo texto dispone que "[t]oda persona tiene derecho a la libertad de reunión y de asociación pacíficas" y que "[n]adie podrá ser obligado a pertenecer a una asociación". Asamblea General de las Naciones Unidas, *Declaración Universal de Derechos Humanos*, https://www.un.org/en/about-us/universal-declaration-of-human-rights (última visita, 6 de marzo de 2023). En atención a lo anterior, reconocimos que el derecho de las personas a asociarse libremente presupone su derecho a no asociarse. Rivera Schatz v. ELA y C. Abo. PR II, 191 DPR 791, 811-812(2014). De igual manera concluimos que la intención de los constituyentes al incluir de forma expresa el derecho a la libre asociación en nuestra Carta de Derechos fue reconocer una especie de protección distinta y de mayor amplitud a la que se reconoce al amparo de la Constitución de Estados Unidos. Íd. pág. 811. Por ese motivo, al disponer de estas controversias "resolvemos por fundamentos locales adecuados e independientes al derecho constitucional federal de libertad de asociación". Rodríguez Casillas *et al.* v. Colegio, supra, pág. 455.

Por otro lado, en el ejercicio de su poder de razón de Estado, la Asamblea Legislativa puede regular la práctica de las profesiones —excepto la jurídica—, **para proteger la salud y el bienestar público**. Rodríguez Casillas *et al.* v. Colegio, supra, pág. 440; Accurate Sols. v. Heritage Environmental,

193 DPR 423, 434 (2015); Matos v. Junta Examinadora, 165 DPR 741, 755 (2005). Con este fin, el "Estado puede establecer unos requisitos de conocimientos mínimos, capacidad, destreza, entereza moral o cualquier otro que esté racionalmente relacionado con el objetivo de garantizar que los examinados posean la competencia para practicar la profesión en forma adecuada". Marcano v. Departamento Estado, 163 DPR 778, 786 (2005).

Ahora bien, hemos resuelto que, por definición, la colegiación compulsoria de un grupo profesional está en conflicto con el derecho fundamental a la libertad de asociación de sus integrantes. Rodríguez Casillas *et al.* v. Colegio, supra, pág. 448. De ahí que, al evaluar la constitucionalidad de los requerimientos de colegiación como condición para practicar una profesión debemos aplicar el escrutinio estricto. Íd., pág. 455. Al hacerlo, se presume que la medida impugnada es inconstitucional. San Miguel Lorenzana v. ELA, 134 DPR 405, 425 (1993). Así, en Col. de Abogados v. E.L.A., 181 DPR 135, 137 (2011), expresamos que una "limitación significativa de la libertad a no asociarse es constitucional solamente si el Estado demuestra un interés gubernamental apremiante que la hace necesaria". En consecuencia, el Estado no puede coartar el derecho de las personas a asociarse o no asociarse, a menos que no exista una medida menos intrusiva. Rodríguez Casillas *et al.* v. Colegio, supra, pág. 433.

De forma clara, resolvimos en <u>Rivera Schatz v. ELA y C.</u>

<u>Abo. PR II</u>, <u>supra</u>, págs. 813-814, que,

> cuando con su proceder el Estado menoscaba un derecho fundamental este **tiene que articular la existencia de un interés apremiante que justifique la necesidad de su actuación.** Además, tal como hemos reconocido con otros derechos fundamentales, **será necesario que el Estado demuestre que no tenía a su alcance medidas menos onerosas que la legislada para lograr el interés articulado.** Solo de esa manera se protege adecuadamente un derecho tan fundamental como el de la libertad de asociación. Además, y conforme al historial que hemos discutido, respetamos la preeminencia que los constituyentes quisieron impartir a este derecho al reconocerlo explícitamente en nuestro documento constitucional. (Negrilla suplida).

Examinado el estándar de análisis que debemos aplicar a las controversias sobre el derecho a la libre asociación, procedemos a evaluar los estatutos que regulan el ejercicio de la profesión de la optometría en Puerto Rico. De ese modo, auscultamos si el Estado cuenta con una medida menos restrictiva que limitar el derecho de asociación de los optómetras.

*B. Junta Examinadora de Optómetras de Puerto Rico*

En el ejercicio de su poder de razón de Estado, la Asamblea Legislativa aprobó la Ley Núm. 246 de 15 de agosto de 1999, según enmendada, conocida como la Ley para Reglamentar la Profesión de la Optometría en Puerto Rico, 20 LPRA sec. 544 *et seq*. Como bien sugiere su título, el mencionado estatuto se aprobó con el fin de regular la profesión de la optometría para beneficio y protección del pueblo. Exposición de Motivos de la Ley Núm. 246-1999, <u>supra</u>.

A esos efectos, se instauró la Junta Examinadora de Optómetras de Puerto Rico, adscrita al Departamento de Salud, y se le confirió facultad para: (a) expedir licencias y certificados a las personas que reúnan los requisitos para practicar la optometría; (b) promulgar los reglamentos necesarios para la ejecución de las disposiciones de la ley, así como para la administración interna de la Junta, la celebración de exámenes de licencia y certificación, y para establecer los procedimientos administrativos de suspensión o revocación de licencias; (c) mantener un libro de actas de todos sus procedimientos; (d) evaluar todas las solicitudes de licencias y recertificaciones; (e) expedir, denegar, suspender o revocar licencias; (f) mantener un registro actualizado de las licencias que se expidan; (g) preparar y administrar los exámenes de licencia y certificación; (h) desarrollar un sistema de información que permita establecer una relación estadística entre los resultados de la reválida y las características de los aspirantes; (i) atender y resolver todas las querellas presentadas por violaciones de la ley o los reglamentos correspondientes, previa notificación y celebración de vista; (j) imponer multas administrativas, y (k) presentar un informe anual de sus trabajos, entre otras. Art. 2, Sec. 2.04 de la Ley Núm. 246-1999, 20 LPRA sec. 544d.

En virtud de su poder de promulgar reglamentos, la Junta adoptó el Reglamento General de la Junta Examinadora de Optómetras de Puerto Rico, Reglamento Núm. 8108 de 17 de

noviembre de 2011 (Reglamento General). Allí se dispone que "[l]a Junta Examinadora de Optómetras de Puerto Rico tiene como propósito fundamental que nuestro pueblo reciba servicios, bienes y cuidados de salud de la mayor calidad, sin barreras de clase alguna que impidan o limiten la accesibilidad y el disfrute de los mismos". Parte I, Art. III del Reglamento General, supra. Asimismo, este cuerpo reglamentario delimita: (1) la composición y procedimientos internos de la Junta Examinadora; (2) los requisitos académicos de admisión a la profesión y el procedimiento para la administración de exámenes de reválida; (3) las especialidades y certificaciones especiales; (4) las pruebas que forman parte del examen visual oftálmico y equipo oftálmico; (5) los actos constitutivos de conducta impropia, fraudulenta o engañosa, y (6) el procedimiento de imposición de medidas disciplinarias. Partes I-VIII del Reglamento General, supra. En aras de atender toda querella o controversia sujeta a adjudicación de la Junta Examinadora, el Reglamento General instituye un procedimiento formal de vistas administrativas. Parte VIII, Art. III, Sec. 3 del Reglamento General, supra. La celebración de estos procedimientos se le puede delegar a un Oficial Examinador, —preferiblemente abogado— que tendrá a su cargo la preparación de un proyecto de resolución. Íd. Los procedimientos adjudicativos pueden ser instados por iniciativa propia de la Junta o en virtud de una querella debidamente fundamentada. Parte VIII, Art. III, Sec. 1 del

Reglamento General, supra. Paralelamente, "[l]a Junta podrá designar a cualquier persona u organismo que crea necesario para llevar a cabo las gestiones de investigación necesarias en estos procedimientos". Parte VIII, Art. III, Sec. 2 del Reglamento General, supra.

Además, para "[p]roteger la salud, seguridad y bienestar del público, requiriendo estándares óptimos en educación continua de los profesionales en optometría" la Junta Examinadora promulgó el Reglamento de Educación Continua, Reglamento Núm. 6182 de 17 de agosto de 2000. Allí se establece todo lo concerniente a los procedimientos de recertificación de optómetras y los requisitos de educación continua que estos deben satisfacer para fomentar la competencia profesional. Partes II y III del Reglamento Núm. 6182, supra.

C. *Colegio de Optómetras de Puerto Rico*

Por otro lado, la Ley Núm. 129 de 17 de diciembre de 1993, conocida como la Ley del Colegio de Optómetras de Puerto Rico, 20 LPRA sec. 545a *et seq.*, creó el Colegio de Optómetras de Puerto Rico y le otorgó las facultades siguientes:

> (a) Subsistir a perpetuidad bajo ese nombre, demandar y ser demandado como persona jurídica, y para ser la voz o el instrumento representativo, a través de todas las formas legítimas y en cuanto a todo asunto en que libremente desee manifestarse, inclusive compareciendo ante los tribunales y agencias en concepto de *amicus curiae* de la colectividad al que constituye la profesión de optometría en Puerto Rico.
> . . .

(e) Redactar y adoptar un reglamento que será obligatorio para todos los miembros, según lo adopte e implante la Asamblea que a tal fin se constituya para su aprobación, o en defecto de dicha Asamblea, según lo redacte e implante la Junta Directiva que más adelante se establece; así como para enmendar dicho reglamento en la forma y bajo los requisitos que en el mismo se instituyan.

. . .

(g) Proteger el interés público y a los colegiados recibiendo, o investigando por su propia iniciativa, quejas o asuntos sobre problemas que atañen a la profesión, conducta impropia sobre violaciones de ética, sobre desacuerdos que surjan entre optómetras y pacientes, o entre optómetras entre sí, o entre optómetras y otros, en lo relacionado a la optometría, o sus materias, en Puerto Rico.

(h) El Colegio referirá las quejas que se le presenten, con sus recomendaciones, a la Junta Examinadora, de modo que ésta disponga lo que en derecho proceda.

(i) Someter para su adopción por la Junta Examinadora, un Código de Ética Profesional que regirá la conducta de los optómetras.

(j) Ejercer las facultades incidentales que fueran necesarias o convenientes, a los fines de su creación y subsiguiente mantenimiento y funcionamiento. Art. 1 de la Ley Núm. 129-1993, 20 LPRA sec. 545b.

De igual modo, entre los deberes y derechos del Colegio se encuentran:

(a) Esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de la profesión de optometría y divulgar, enaltecer y honrar esta imagen en todo lo que esté a su alcance.

(b) Contribuir a la permanencia, al progreso y adelanto de la profesión de optometría en Puerto Rico, así como de aquellas artes e industrias relacionadas con la misma, y publicar y circular periódicos, revistas, libros, artículos y material impreso, así como la preparación o el auspicio y la presentación de programas acerca de la optometría, utilizando cualquiera de los medios de comunicación existentes.

(c) Orientar a la ciudadanía acerca de la profesión de optometría.

(d) Rendir los informes y consultas que el Gobierno le solicite, y cooperar con los gobiernos municipales, estatal y federal y sus agencias, instrumentalidades públicas y organismos reguladores en todo cuanto sea de interés mutuo o de beneficio al bienestar general del pueblo y que esté relacionado con la optometría.

(e) Proteger a los optómetras y a la profesión de optometría, defender sus derechos e inmunidades y combatir todo acto lesivo a la profesión, inclusive llevando ante los tribunales a las personas naturales o jurídicas responsables o causantes de dichos actos y a intervenir, de estimarlo propio, en aquellos asuntos relacionados con la profesión de optometría o con los optómetras que en opinión de su Junta Directiva ameriten su participación. Art. 12 de la Ley Núm. 129-1993, 20 LPRA sec. 545k.

Además de las facultades previamente mencionadas, el Colegio puede recurrir a los tribunales para solicitar órdenes de cese y desista de actos que constituyan práctica ilegal de la optometría. Art. 11 de la Ley Núm. 129-1993, 20 LPRA sec. 545j.

En lo atinente a la controversia aquí planteada, el estatuto dispone que "ningún optómetra que no sea miembro del Colegio podrá ejercer dicha profesión en Puerto Rico". Art. 4 de la Ley Núm. 129-1993, 20 LPRA sec. 545c. La falta de pago de las cuotas al Colegio conlleva la suspensión de la licencia por parte de la Junta Examinadora. Art. 10 de la Ley Núm. 129-1993, 20 LPRA sec. 545i.

Al aprobar la disposición citada, el legislador no pasó por alto el dilema constitucional que suponía el requisito de

afiliación compulsoria. Sobre el tema, la Exposición de Motivos de la Ley Núm. 129-1993, supra, enuncia:

> La colegiación obligatoria de las distintas profesiones, así como la imposición de cuotas para sufragarla, tienen amplia base constitucional. Se reconoce que aunque la colegiación compulsoria incide sobre la libertad del profesional para practicar la profesión y para no asociarse, en el balance de conveniencias los intereses apremiantes que motivan la colegiación superan esa molestia mínima.

Como explicamos a continuación, ese no es el escrutinio constitucional aplicable.

### III

Antes de disponer de la controversia, debemos atender unas interrogantes traídas por el Estado relacionadas con el escrutinio que aplicamos en estos casos.

Primero, el Estado sugiere que debemos cuestionarnos la posibilidad de validar la colegiación compulsoria de los optómetras si esta adelanta mejor o de manera más efectiva el interés del Estado. En específico cuestiona: "¿No deben los foros judiciales validar el mecanismo existente, si en efecto, adelanta mejor y efectivamente el interés apremiante del Estado?" Alegato del Estado, pág. 2. La respuesta es sencilla; no. Solo podemos validar la colegiación obligatoria de un grupo profesional si se demuestra que es imprescindible. Hemos establecido de forma diáfana que si el Estado tiene a su alcance una alternativa que no violente el derecho fundamental, está obligado a utilizarla. Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813. El menoscabo de un derecho fundamental no puede validarse por ser más efectivo o

conveniente para el Estado. "La norma constitucional no se establece por la conveniencia del momento". Senado de PR v. ELA, 203 DPR 62, 85 (2019).

Por otra parte, el Estado sostiene que debemos cuestionarnos si es correcto declarar inconstitucional la colegiación compulsoria de los optómetras, sin tener constancia de que la denominada alternativa menos restrictiva puede sustituir de manera viable y efectiva el esquema que se pretende declarar inconstitucional. Sobre este punto, lo que el escrutinio estricto nos ordena evaluar es si existe una alternativa menos restrictiva para adelantar el interés apremiante del Estado, no para sustituir el esquema impugnado. Alterar los esquemas que instaura la Asamblea Legislativa para regular la práctica de las profesiones, es una prerrogativa legislativa. Si la Rama Legislativa entiende que una profesión podría regularse de manera más efectiva, es esta quien tiene el poder de legislar para proveer los mecanismos adecuados a esos fines. No obstante, el escrutinio estricto es claro; si el Estado tiene una manera de conseguir sus objetivos sin afectar el derecho fundamental a la libertad de asociación de terceros, la limitación del derecho es inconstitucional. Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813.

Dicho esto, luego de un análisis exhaustivo de los deberes y facultades delegados a la Junta Examinadora y al Colegio de Optómetras, concluimos que en este caso la

colegiación compulsoria no es indispensable para adelantar el interés apremiante del Estado.

El Colegio argumenta que el Tribunal de Apelaciones aplicó de manera automática lo resuelto por esta Curia en Rodríguez Casillas *et al.* v. Colegio, supra, sin considerar que la colegiación compulsoria de los optómetras, a diferencia de otras profesiones, responde a la necesidad del Estado de velar por que la práctica de la profesión se realice bajo los más altos estándares, para proteger la salud y la vida del pueblo. Así las cosas, su argumento principal es que en la controversia que nos atañe, la relevancia del interés apremiante del Estado justifica la "lesión mínima" al derecho individual de este grupo de profesionales. No le asiste la razón.

De entrada, la existencia de un interés apremiante es imprescindible para validar la violación de un derecho fundamental. Sin embargo, el análisis constitucional no termina ahí. Aquí indiscutiblemente el Estado tiene un interés apremiante en regular la profesión de la optometría y de ese modo, velar por la salud del pueblo. De hecho, una de las razones por las cuales este Tribunal ha validado la autoridad de la Asamblea Legislativa de regular la práctica de las profesiones es precisamente para proteger la salud del pueblo. Rodríguez Casillas *et. al* v. Colegio, supra, pág. 440. Pese a lo anterior, hemos sido enfáticos en que mediante ese ejercicio no se pueden coartar derechos fundamentales, a menos que no haya otra alternativa menos restrictiva. Rivera

Schatz v. ELA y C. Abo. PR II, supra, pág. 813. El argumento de que la colegiación compulsoria representa una "lesión mínima" al derecho de asociación en comparación con el fin que persigue, se abstrae de la realidad jurídica de que se trata de una intromisión con un derecho fundamental. Al ser así, ineludiblemente debe superar un escrutinio estricto.

Por otra parte, el Colegio intenta justificar la necesidad de la colegiación compulsoria bajo el fundamento de que posee facultades adicionales a las que ostenta la Junta Examinadora, y que estas son de gran importancia para proteger la salud pública. Específicamente, el Colegio alude a su facultad de proteger el interés público y de sus colegiados al investigar *motu proprio* quejas sobre violaciones éticas, prácticas impropias y desacuerdos entre optómetras y pacientes, entre otros. Art. 3(g) de la Ley Núm. 129-1993, 20 LPRA sec.545b. Además, declara que no tendría sentido que su membresía sea de carácter voluntario dado que actualmente el número de colegiados no excede de 417 y si la membresía se diluye no habría una forma eficaz de impedir prácticas lesivas a la profesión. Subraya que solo se puede dar cumplimiento a los fines de la ley, si a los optómetras se le requiere que tengan que responder ante el ente creado para velar su desempeño.

Nuevamente, ese no es el escrutinio constitucional aplicable. Tampoco hay un requisito numérico para eximir a un grupo de profesionales de su derecho a asociarse libremente. Hay que enfatizar que el organismo creado para velar y

fiscalizar el desempeño de los optómetras es la Junta Examinadora, mediante sus extensas facultades reguladoras. No podemos arribar a otra conclusión pues la Junta Examinadora es el único organismo autorizado por la ley a suspender o cancelar licencias para ejercer la profesión de la optometría. Art. 2, Sec. 2.04 (a)(e) de la Ley Núm. 246-1999, 20 LPRA sec. 544d. Asimismo, como ente fiscalizador, tiene la facultad de imponer multas por el incumplimiento de la ley y sus reglamentos. Art. 2, Sec. 2.04 (j) de la Ley Núm. 246-1999, supra. En esa línea, la Junta ha delimitado y proscrito ciertos actos impropios, fraudulentos y engañosos que pueden afectar a terceros. Parte VII, Art. 1 del Reglamento General, supra. Para la adjudicación de querellas u otras controversias, el Reglamento General instituye un procedimiento formal de vistas. Parte VIII, Art. III, Sec. 2 del Reglamento General, supra.

Cabe destacar que la Junta Examinadora tiene autoridad para iniciar *motu proprio* cualquier procedimiento disciplinario sobre violaciones éticas o prácticas impropias y realizar las investigaciones correspondientes. Véanse, Sec. 2.5 (b) de Ley Núm. 246-1999, 20 LPRA sec. 544e; Parte VIII, Art. III, Sec. 1 del Reglamento General, supra. Más aun, la Junta Examinadora puede designar a cualquier persona u organismo para que investigue estos asuntos disciplinarios. Parte, VIII, Art. III, Sec. 2 del Reglamento General, supra.

Ciertamente, al Colegio se le reconoce la facultad de investigar por iniciativa propia asuntos que atañen a la

profesión de la optometría, para proteger el bienestar público y de sus colegiados. Art. 3(h) de la Ley Núm. 129-1993, 20 LPRA sec.545b. Esta facultad no está en controversia. Sin embargo, no se trata de que la Junta Examinadora no tenga poderes investigativos, sino de que el Colegio posee autoridad para investigar de forma general diversos asuntos relacionados a la profesión, para beneficio público y de sus colegiados. De hecho, de la misma disposición que autoriza al Colegio a investigar, se desprende que este organismo "referirá las quejas que se le presenten, con sus recomendaciones, a la Junta Examinadora, de modo que ésta disponga lo que en derecho proceda". Art. 3(h) de la Ley Núm. 129, supra. Así pues, queda claro que el Colegio no puede adjudicar controversias que afecten la práctica de la profesión. Más bien, su facultad opera como un brazo auxiliador de la Junta Examinadora, que es el ente a quien los optómetras vienen obligados a responderle.

De igual forma, reconocemos el rol colaborativo del Colegio en la preparación del Código de Ética Profesional de los optómetras y su facultad de acudir a los tribunales para prevenir prácticas ilegales de la profesión. Art. 3(i) y Art. 11 de la Ley Núm. 129-1993, supra. Estas funciones no están en controversia, pues la inconstitucionalidad del requerimiento de afiliación compulsoria no invalidaría el estatuto que creó el Colegio ni las facultades que le delegó la Asamblea Legislativa. Lo cierto es que no es necesaria la colegiación compulsoria para que el Colegio investigue

asuntos sobre la profesión, en beneficio de sus miembros y del público en general. Tampoco hace falta la colegiación obligatoria para que el Colegio pueda recomendar unas reglas éticas a la Junta Examinadora, ni para que pueda acudir a los tribunales para prevenir la práctica ilegal de la profesión.

En la controversia de autos, el Tribunal de Apelaciones resolvió que la Junta Examinadora es el medio menos restrictivo para adelantar los intereses del Estado sin menoscabar el derecho de los profesionales a no asociarse. El Colegio, si bien recurrió de dicha determinación, no nos puso en posición de concluir lo contrario. Más allá de resaltar el rol de esta entidad en beneficio de la profesión, el Colegio y el Gobierno no cumplieron con el peso de probar que la asociación compelida de los optómetras es indispensable para lograr los objetivos del Estado. La realidad es que no adelantaron ni un solo interés apremiante que no se pueda lograr sin obligar a estos profesionales a asociarse con quien no desean.

Ante el escenario descrito, y luego de un análisis detallado de los estatutos que rigen la profesión de la optometría, concluimos que la colegiación obligatoria no representa el mecanismo menos intrusivo para regular la práctica de esta profesión y de ese modo proteger la salud del pueblo. Reiteramos que esta determinación no interviene con la vigencia de los estatutos que crearon la Junta Examinadora, el Colegio y sus demás disposiciones. Por tanto, el Colegio puede seguir llevando a cabo las funciones a las

que está facultado y complementar a la Junta Examinadora en la consecución del interés apremiante del Estado de velar por la salud del pueblo. No obstante, como hemos dicho "la excelencia de la profesión no tiene y no debe estar sujeta al menoscabo del derecho de asociación de los profesionales que constituye la colegiación obligada". Rodríguez Casillas *et al.* v. Colegio, supra, pág. 453.

Por los fundamentos expuestos, se confirma la Sentencia del Tribunal de Apelaciones. En consecuencia, se decreta la inconstitucionalidad del Art. 4 de la Ley 129 de 17 de noviembre de 1993, 20 LPRA sec. 545c.

Se dictará Sentencia en conformidad.


RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sandra Vélez Colón y otros

    Apelados

      v.                           AC-2022-0059

Colegio de Optómetras de Puerto Rico y otros

    Apelantes

SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2023.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se confirma la Sentencia del Tribunal de Apelaciones. En consecuencia, se decreta la inconstitucionalidad del Art. 4 de la Ley 129 de 17 de noviembre de 1993, 20 LPRA sec. 545c.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emitió una Opinión de conformidad. La Jueza Presidenta Oronoz Rodríguez disintió y emitió una Opinión disidente. El Juez Asociado señor Colón Pérez disintió del resultado al que hoy se llega e hizo constar las expresiones siguientes:

> El requisito de colegiación compulsoria, que se exige en nuestro País como condición para ejercer determinadas profesiones, es una medida de protección social. El mismo, a todas luces, puede co-habitar en nuestro ordenamiento jurídico con el derecho constitucional a la libre asociación. **Uno no cancela al otro**. Sobre el particular, véase nuestra Opinión de Conformidad en *Reyes Sorto y otros v. ELA y otros*, 2023 TSPR 62, 211 DPR ___ (2023).

Siendo ello así, no albergamos duda alguna que, en vista de la importante función que desempeña el Colegio de Optómetras de Puerto Rico, -- particularmente, en las áreas de protección social, ética y educación continua --, somos del criterio que el derecho de sus miembros a no asociarse debió ceder ante los intereses que adelantaba la colegiación compulsoria.

A todas luces, los principios antes detallados, según recogidos en la Ley Núm. 129 de 17 de diciembre de 1993, 20 LPRA sec. 545 *et seq.*, y en los reglamentos que de ella se derivan, -- que bien cumple el Colegio de Optómetras de Puerto Rico --, justificaban por demás el requisito de colegiación compulsoria de los miembros del mencionado gremio, como condición para poder ejercer en nuestra jurisdicción la profesión de la optometría.

Es, pues, por todo lo antes expuesto, que respetuosamente disentimos del curso de acción seguido por mis compañeros y compañera de estrado en el día de hoy.


El Juez Asociado señor Estrella Martínez disintió sin opinión escrita.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sandra Vélez Colón y otros<br>Apelados<br>v.<br>Colegio de Optómetras de Puerto Rico y otros<br>Apelantes | AC-2022-0059 | *Apelación* |

**Opinión de conformidad emitida por el Juez Asociado señor Rivera García**

En San Juan, Puerto Rico, a 23 de junio de 2023.

El imperativo de que los casos de colegiación compulsoria sean adjudicados dentro del contexto particular de cada profesión no representa una mera expresión aspiracional. Más bien, intima una realidad jurídica en la cual algunos esquemas de colegiación compulsoria son constitucionales y otros no. Hoy, nos enfrentamos ante una medida de asociación compelida que no sobrepasa el crisol de nuestra Carta Magna.

Por los fundamentos que expondré a continuación, estoy conforme en decretar la inconstitucionalidad de la colegiación compulsoria de los **optómetras**. Cónsono con el criterio que expresé en mi *Opinión Concurrente* en *Colegio de Veterinarios v. Veterinario Express et al*, 210 DPR __ (2022), 2022 TSPR 113, ante un esquema de regulación en el cual **todas las funciones necesarias** para garantizar la excelencia profesional **ya son ejercidas por una junta examinadora**, la colegiación compulsoria resulta una

imposición innecesaria para adelantar los poderosos intereses que pueda tener el Estado.

I

Los hechos de este caso se encuentran recogidos adecuadamente en la *Opinión* del Tribunal. Por ello, procedo directamente a los fundamentos que motivan mi conformidad.

**A.** *Derecho a la no asociación y la colegiación compulsoria*

El derecho a la asociación surge expresamente de nuestra Constitución. Allí se preceptúa que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares".[1] Ciertamente, la preeminencia de este derecho en nuestra jurisdicción no se discute, pues obedece a una intención de reconocer un derecho distinto a aquel que surge de la Constitución federal.[2]

En fiel apego a los valores que protege esta garantía constitucional, desde hace décadas este Foro reconoció que el derecho a la asociación supone necesariamente el derecho a no asociarse.[3] Al así hacerlo, hemos sido enfáticos que nuestra discusión respecto a este derecho constitucional se enmarcaba en los confines de la Constitución de Puerto Rico, como **fundamento estatal adecuado e independiente**.[4]

---

[1] Const. P.R., Art. II, Sec. 6.
[2] *Rivera Schatz v. ELA II*, 191 DPR 791, 810-11 (2014).
[3] *Rivera Schatz v. ELA* II, supra, págs. 811-12 (citando a *Colegio de Abogados v. Schneider*, 112 DPR 540 (1982)).
[4] *Íb.*, pág. 809 (Invocando la doctrina de *Michigan v. Long*, 463 US 1032 (1983)).

Ahora bien, la doctrina atinente a este derecho constitucional no había sido objeto de mayor discusión hasta el momento en el que emitimos nuestra *Opinión* en *Rivera Schatz v. ELA II*, 191 DPR 791 (2014). Allí, nos expresamos sobre el esquema de colegiación compulsoria que se le había impuesto en nuestra jurisdicción a los abogados. Amparados **exclusivamente en nuestro poder inherente para reglamentar la profesión legal**, declaramos inconstitucionales ciertas disposiciones de la Ley Núm. 109-2014, las cuales habían reestablecido la colegiación compulsoria de los letrados.[5]

Fue nuestro criterio que la reimposición de la colegiación compulsoria a los abogados representaba una intromisión inconstitucional en la esfera delegada a este Tribunal por nuestra Carta Magna.[6] Además, estimamos, que como Foro rector poseíamos las herramientas necesarias para salvaguardar el buen funcionamiento de la justicia en Puerto Rico.[7] Al evaluar la improcedencia del esquema de colegiación compulsoria de la profesión legal, indicamos que "los abogados son un grupo de profesionales *sui géneris* que, *contrario a otros grupos profesionales*, están fiscalizados por un ente permanente que los regula de manera independiente a cualquier grupo profesional o colegio".[8] (Bastardillas en el original).

---

[5] *Íb.*, pág. 795.
[6] *Íb.*, pág. 821.
[7] *Íb.*
[8] *Íb.*, págs. 816-17.

Ahora bien, como parte de nuestra exposición del derecho, también nos expresamos sobre las imbricaciones constitucionales del requerimiento de asociación a una organización, como precondición para ejercer una profesión.[9] Ya en *Colegio de Abogados v. ELA*, 181 DPR 135, 137 (2011), mediante *Resolución*, habíamos adelantado que

> es la colegiación compulsoria de una clase profesional la que crea una fricción inevitable con la libertad de asociación de los afectados. Por ello, esa limitación significativa de la libertad a no asociarse es constitucional solamente si el Estado demuestra un interés gubernamental apremiante que la hace necesaria.[10]

Así, en *Rivera Schatz v. ELA II*, supra, reconocimos que una medida que incida sobre este derecho fundamental deberá representar no solamente un interés apremiante del Estado, sino que debe ser un medio menos oneroso para la consecución de ese fin.[11]

Posteriormente, este Foro tuvo una segunda ocasión para atender una controversia sobre un esquema de colegiación compulsoria en *Rodríguez Casillas v. Colegio de Técnicos y Mecánicos Automotrices de Puerto Rico*, 202 DPR 428 (2019). Allí, resolvimos que nuestra discusión en *Rivera Schatz v. ELA II,* supra*, sobre el derecho a la no asociación, era extensiva a otras profesiones.[12] Consecuentemente, reiteramos que cualquier actuación estatal que interfiriera

---

[9] *Rivera Schatz v. ELA II*, *supra*, pág. 809.
[10] *Colegio de Abogados v. ELA*, 181 DPR 135, 137 (2011).
[11] *Rivera Schatz v. ELA II*, supra, pág. 813.
[12] *Rodríguez Casillas v. Colegio de Técnicos y Mecánicos Automotrices de Puerto Rico*, 202 DPR 428, 451 (2019).

con el ejercicio del derecho a la asociación debería sobrepasar, para su validez, un escrutinio constitucional estricto.[13] Ello, presupone la existencia de un interés apremiante que haga la actuación necesaria y que el Estado no tenga a su alcance medidas menos onerosas para lograr el interés articulado.[14]

Según concluimos, **en el contexto particular de los técnicos y mecánicos automotrices**, aunque existía un interés apremiante del Estado, la colegiación compulsoria no era el medio menos oneroso.[15] Así, recurrimos a un análisis detallado de las disposiciones que crearon la Junta Examinadora de Técnicos y Mecánicos Automotrices y el Colegio de Técnicos y Mecánicos Automotrices de Puerto Rico. Al comparar estas disposiciones, estimamos que sería mediante el buen ejercicio de las facultades delegadas a esa junta examinadora que se lograrían mantener estándares altos en esa profesión.[16]

Destaco, que en esa ocasión el compañero Juez Asociado señor Estrella Martínez apuntaló, que era "necesario enfatizar que el esquema de colegiación compulsoria invalidado en este *caso particular* no necesariamente corresponde a la realidad de las profesiones restantes en Puerto Rico".[17] (Énfasis en el original). Lo anterior, pues

---

[13] *Íb*., pág. 449-50.
[14] *Íb*., pág. 450.
[15] *Íb*., pág. 452.
[16] *Íb*., pág. 452.
[17] *Íb*., pág. 457. (Expresión concurrente, J. Estrella Martínez).

la regulación de las diversas profesiones es un asunto que **no puede tratarse homogéneamente**.[18]

En los años sucesivos, esta Curia ha tenido nuevas oportunidades para revisitar el tema de la colegiación compulsoria y su relación con el derecho a la no asociación. Como es de conocimiento, las decisiones más recientes en *Colegio de Médicos Veterinarios de Puerto Rico v. Veterinario Express et al*, supra, y *Reyes Sorto et al v. CIAPR,* 2023 TSPR 62, 211 DPR \_\_ (2023), no produjeron una opinión mayoritaria.

Sin embargo, tal y como lo hice en esas ocasiones, reafirmo la necesidad de precisar las características que debe exhibir un método alterno a la colegiación compulsoria, para que pueda decretarse la inconstitucionalidad de esta última. Por ello, reafirmo mi criterio de que la determinación sobre si efectivamente existe un medio menos oneroso requiere, responsablemente, determinar que esa alternativa sea **viable y efectiva**.

No obstante, ya en *Colegio de Médicos Veterinarios de Puerto Rico v. Veterinario Express et al*, supra*,* adelanté que cuando la reglamentación de una profesion demuestre que puede operar efectivamente sin necesidad de una colegiación compulsoria, la ausencia de esta resulta una alternativa viable.[19] Esto se manifiesta con absoluta claridad cuando la

---

[18] *Íb*.

[19] *Colegio de Veterinarios v. Veterinario Express et al*, supra. (Opinión concurrente, J. Rivera García, pág. 13).

prueba demuestra que el rol del colegio profesional **"no es el de ejercer funciones de otro modo pertenecientes al Estado, sino el de complementar las ya ejercidas por la Junta Examinadora"**.[20]

## II

Es evidente que la determinación sobre la constitucionalidad de la colegiación compulsoria de los optómetras debe emitirse con plena consciencia sobre los poderosos asuntos en juego. Ciertamente, nos adentramos por primera vez en la consideración de una medida de colegiación compulsoria intrínsecamente atada a la preservación de la salud pública.

En vista de que aquí nos enfrentamos ante uno de los ejes del poder de razón estatal, debemos proceder cautelosamente en el ejercicio de la función judicial. Aun así, reconociendo el poderoso interés gubernamental en la preservación de la salud pública, debemos ser igualmente celosos en la protección del derecho individual a no asociarse, máxime cuando la asociación compelida **no resulte indispensable para adelantar los intereses del Estado.**

Con esto en mente, y ante el hecho indisputado de que estamos ante una medida que incide sobre el derecho de los apelados a no asociarse, procede someter la medida de colegiación compulsoria aquí impugnada a los rigores del escrutinio estricto. De entrada, la normativa atinente nos

---

[20] Íb., pág. 19.

exige que encontremos la presencia de un interés apremiante alegado por el Estado. Como reconoce el Tribunal, aquí no hay duda alguna de que existe un poderosísimo interés estatal en la reglamentación y aseguramiento de la salud pública. No obstante, esto no dispone de la controversia.

Un segundo aspecto de la consideración constitucional requiere que determinemos si la colegiación compulsoria, como medida que indudablemente incide sobre el derecho del individuo a no asociarse, representa el medio menos oneroso al derecho agraviado y que, a su vez, adelante el interés estatal. Cónsono con mi postura, **sostengo que no es posible la determinación de que existe una alternativa menos onerosa si esta no es lo suficientemente viable y efectiva como para adelantar el interés gubernamental.**

Ahora bien, tras examinar el expediente, mi análisis confirma que bajo el esquema existente **es únicamente la Junta Examinadora de Optómetras quien ostenta la totalidad de las funciones reguladoras en esta profesion.** En ese sentido, **el modelo regulatorio que proponen los apelados como medio menos oneroso es esencialmente el mismo que ya existe.** Es precisamente por ello que salta a la vista la patente redundancia del requisito de colegiación compulsoria. Difícilmente se puede argumentar que la medida impuesta atenta contra el interés del Estado, cuando el propio gobierno no ha investido al gremio con función alguna que pudiese ameritar que los profesionales de la optometría tengan que estar colegiados por mandato de ley.

Al examinar las funciones de esta Junta Examinadora y el COPR, encuentro un caso similar al de los médicos veterinarios. Recordemos, que bajo ese esquema el colegio profesional, sin menosprecio a su importante función social, fungía únicamente como un facilitador y brazo auxiliar del poder estatal. Igualmente, tampoco hay controversia de que bajo la legislación y reglamentación que rige en esta profesión no se le ha delegado al COPR el tipo de funciones que, por ejemplo, tiene el Colegio de Ingenieros y Agrimensores de Puerto Rico (CIAPR).

Como expuse en mi *Opinión de Conformidad* en *Reyes Sorto et al v. CIAPR*, supra, el modelo regulatorio de la ingeniería y la agrimensura se fundaba en una patente delegación de funciones al CIAPR. En esos hechos, el CIAPR era quien ejercía, para todo efecto práctico, la función regulatoria de la ética profesional.[21] Además, el CIAPR administraba, por delegación de la propia junta examinadora de ingenieros y agrimensores, el programa de educación continua.[22] Ciertamente, como presupuesto mínimo, la colegiación compulsoria en esas profesiones adelantaba el interés estatal, indistintamente de los argumentos que tuviéramos sobre si había otras alternativas menos onerosas al derecho a no asociarse.

---

[21] *Reyes Sorto et al v. CIAPR*, 2023 TSPR 62, 211 DPR __ (2023) (Opinión de conformidad, J. Rivera García, pág. 29).

[22] *Íb.*, pág. 30.

Sin embargo, a mi juicio, no podemos decir lo mismo en el caso de los optómetras. Aquí, no surge ninguna función regulatoria que el COPR ostente y que la Junta Examinadora no. En cuanto a esto, mucho se ha discutido sobre la facultad estatutaria que tiene el COPR para, en el interés público y de los colegiados, recibir o investigar a su propia iniciativa quejas o asuntos sobre (1) problemas que atañen a la profesión, (2) conducta impropia sobre violaciones éticas y (3) desacuerdos entre optómetras y pacientes, optómetras entre sí y otros.[23] Todo lo anterior, en lo relacionado a la optometría y sus materias.[24]

A simple vista, esto daría la impresión de que estamos ante una facultad estatutaria que la Junta Examinadora carece. No obstante, la realidad es otra. En el caso de una entidad que lleva a cabo funciones cuasi-legislativas y cuasi-judiciales, como lo es una junta examinadora, el poder investigativo supone una extensión lógica de sus facultades. Se perfila como un presupuesto básico para el funcionamiento de una entidad que viene llamada a tomar decisiones informadas. Prueba de ello es el hecho de que la Junta Examinadora reconoció por reglamento su facultad para realizar investigaciones, incluso *motu proprio*, como parte del trámite de atender una querella.[25] Al así hacerlo,

---

[23] 20 LPRA sec. 545b.

[24] *Íb.*

[25] Art. III, Sec. 2, Reglamento General de la Junta Examinadora de Optómetras de Puerto Rico, Reglamento Núm. 8101 de 17 de noviembre de 2011, Departamento de Salud, pág. 21.

meramente instrumentaliza la autoridad indubitada que tiene para dar cumplimiento a su ley orgánica.

En suma, la colegiación compulsoria de los optómetras choca irremediablemente con nuestra Constitución, en tanto el estudio de las disposiciones atinentes a esa profesión demuestra que esta imposición no es necesaria para adelantar el interés estatal. Por ello, no tengo reparos en concluir que esta colegiación compulsoria no cumple fin alguno. Ello, ante la ausencia de funciones regulatorias que le fueran asignadas al colegio profesional.

En un caso como este, la conclusión de que existe un medio menos oneroso a la colegiación compulsoria —**y que es viable**— se desprende de un estudio integral de las disposiciones legales aplicables. Por ello, estoy conforme con la determinación que hoy toma este Foro.


Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Sandra Vélez Colón y otros<br><br>Apelados<br><br>v.<br><br>Colegio de Optómetras de Puerto Rico y otros<br><br>Apelantes | AC-2022-0059 | |

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión disidente

En San Juan, Puerto Rico, a 23 de junio de 2023.

Cuando nos enfrentamos a la tarea de evaluar si una medida que impone un requisito de colegiación compulsoria es constitucional o no, es imprescindible determinar, en primera instancia, a cuál *o a cuáles* intereses apremiantes responde. En ese sentido, la aplicación del escrutinio estricto debe darse en cada uno de ellos para poder determinar si existe una medida menos onerosa, viable y efectiva o no, que adelante ese interés en particular. Concretamente, en el caso ante nuestra consideración, no solo estamos ante un interés apremiante del Estado en regular la profesión de las y los optómetras, **sino que también existe un interés apremiante en proteger la salud pública de la ciudadanía puertorriqueña.**

Luego de un análisis particularizado y concienzudo de las facultades y los deberes que posee tanto el Colegio de Optómetras de Puerto Rico (Colegio) como la Junta Examinadora de Optómetras de Puerto Rico (Junta Examinadora), concluyo que esta última, ciertamente, constituye la medida menos onerosa, efectiva y viable para adelantar el interés del Estado de regular la profesión de la optometría. **Sin embargo, el segundo interés apremiante al que nos confrontamos en este caso -el de la salud pública- en forma alguna se adelante mediante las labores de la Junta Examinadora.** En ese sentido, es forzoso colegir que la colegiación compulsoria aquí impugnada es la medida menos onerosa existente para adelantar ese interés de la más alta jerarquía. Por consiguiente, sobrevive el crisol del escrutinio estricto. Disiento, pues, del curso de acción de la mayoría.

## I.

### A. El derecho a la libre asociación

Nuestra Constitución protege el derecho fundamental de que las personas puedan asociarse y organizarse libremente, siempre y cuando el fin sea lícito. Art. II, Sec. 6 Const. ELA, LPRA, Tomo 1. A su vez, este Tribunal interpretó que este derecho no solo opera en su vertiente positiva, sino que también se reconoció ampliamente el derecho de las personas a no asociarse. Rodríguez Casillas v. Colegio de Técnicos y Mecánicos Automotrices de Puerto Rico, 200 DPR 429, 449 (2019); Rivera Schatz v. ELA y C. Abo. PR II, 191

DPR 791, 811-812 (2014). Sin embargo, y como sucede con los demás derechos fundamentales, **el derecho a la libre asociación en ambas vertientes no es absoluto**. Una medida legislativa que incida indebidamente sobre este derecho puede sobrevivir si: (1) persigue un interés apremiante del Estado y (2) el medio empleado para adelantar ese interés sea el menos oneroso. Rodríguez Casillas v. Colegio de Técnicos y Mecánicos Automotrices de Puerto Rico, supra, pág. 449-450; Rivera Schatz v. ELA y C. Abo. PR II, supra, pág. 813. En otras palabras, la determinación de constitucionalidad de la legislación impugnada debe sobrevivir la aplicación de un escrutinio estricto.

En ese sentido, varios miembros de este Tribunal nos hemos dado a la tarea de brindarle mayor contenido a lo que significa el **medio menos oneroso**. Lo anterior se hace imperioso ante un esfuerzo incesante de ciertos integrantes de esta Curia de aplicar un análisis mecánico y trillado del escrutinio estricto a la colegiación compulsoria de las profesiones, ofreciendo un trato homogéneo que no reconoce distintividad alguna. Así pues, acudimos a la casuística federal para proveerle un mayor contexto al término. En U.S. v. Playboy Entertainment Group, Inc., 529 U.S. 803 (2000), la Corte Suprema federal reafirmó que en caso de existir un medio menos restrictivo para lograr adelantar el interés apremiante que se intenta proteger, el Estado está compelido a utilizarlo. Reyes Sorto y otros v. ELA y otros, 2023 TSPR 62, 211 DPR ___ (2023) (Opinión de Conformidad, J. Rivera

García, pág. 23) (citando a U.S. v. Playboy Entertainment Group, Inc., supra, págs. 815-816). Sin embargo, añadió que cuando se ofrece una alternativa menos onerosa y plausible, **el Estado debe probar que dicha alternativa no será efectiva para adelantar el interés apremiante que busca proteger.** Íd.

### B. Junta Examinadora de Optómetras

La práctica de la optometría en Puerto Rico ha sido regulada desde la década de los años 30. No obstante, no fue hasta la aprobación de la Ley Núm. 80 de 26 de junio de 1964, (1964 Leyes de Puerto Rico 266) que se creó la Junta Examinadora de Optómetras. Posteriormente, se promulgó la *Ley para Reglamentar la Profesión de la Optometría en Puerto Rico*, Ley Núm. 246-1999, 20 LPRA secs. 544-544y. Esta legislación tuvo el propósito de regular la práctica "de una manera que responda a los adelantos científicos y profesionales ocurridos en las últimas décadas". Exposición de Motivos de la Ley Núm. 246-1999 (1999 (Parte 1) Leyes de Puerto Rico, 1034). Asimismo, la Asamblea Legislativa expresó que mantener la legislación anterior, "resultaría no tan solo limitar irracionalmente a los profesionales de la optometría puertorriqueños en el desempeño cabal de su profesión, sino también en una privación al pueblo de Puerto Rico de recibir cuidado de alta calidad". Íd.

Entre las facultades y deberes de la Junta Examinadora se encuentran los siguientes: (1) autorizar la práctica de la Optometría y la Optometría Certificada en Puerto Rico quedando facultada para expedir las correspondientes

licencias y certificados a todas las personas que reúnan los requisitos estipulados en la ley; (2) dictar las reglas y reglamentos necesarios para la ejecución efectiva de las disposiciones de la ley, así como para la administración interna de la Junta, para la celebración de exámenes de licencia y certificación, para establecer los procedimientos administrativos para las vistas de suspensión o revocación de licencias, y para establecer el procedimiento apelativo de las decisiones administrativas emitidas por la Junta; (3) expedir, denegar, suspender o revocar licencias por las razones que se consignan en la ley; (4) mantener un registro actualizado de las licencias que se expidan; (5) preparar y administrar los exámenes requeridos; (6) desarrollar un sistema de información y registro que permita establecer una relación estadística entre los resultados de la reválida y las características de los aspirantes; (7) atender y resolver todas las querellas presentadas por violaciones a las disposiciones de esta Ley o de los reglamentos adoptados en virtud de la misma, previa notificación y celebración de vista; (8) imponer multas administrativas a las personas que violen lo establecido por esta Ley o su reglamento, previa vista administrativa; (9) presentar al Gobernador, por conducto del Secretario de Salud, a la Asamblea Legislativa de Puerto Rico y al Colegio de Optómetras de Puerto Rico un informe anual de sus trabajos; (10) preparar información de interés público, describiendo sus funciones y procedimientos ante querellas radicadas y resueltas, y publicar las mismas

en el Internet, entre otros. Ley Núm. 246-1999, supra, sec. 544d.

De un simple examen de lo anterior salta a la vista que **estas facultades van dirigidas a regular la práctica profesional de las y los optómetras**, según dispone la Ley 246-1999, supra.

### C. Colegio de Optómetras de Puerto Rico

Por su parte, la Asamblea Legislativa aprobó la *Ley del Colegio de Optómetras de Puerto Rico*, Ley Núm. 129-1993, 20 LPRA secs. 545-545p. A raíz de la promulgación de esta Ley, se impuso la colegiación compulsoria como requisito *sine qua non* para ejercer la profesión de optometría en Puerto Rico. Íd., sec. 545c.

Dentro de las facultades conferidas al Colegio, se le otorgó poder para: (1) ser la voz o el instrumento representativo, inclusive compareciendo ante los tribunales y agencias en concepto de *amicus curiae* de la colectividad que constituye la profesión de optometría en Puerto Rico; (2) redactar y adoptar un reglamento que será obligatorio para todos los miembros; (3) **proteger el interés público y a los colegiados recibiendo, o investigando por su propia iniciativa, quejas o asuntos sobre problemas que atañen a la profesión, conducta impropia sobre violaciones de ética, sobre desacuerdos que surjan entre optómetras y pacientes, o entre optómetras entre sí, o entre optómetras y otros, en lo relacionado a la optometría, o sus materias, en Puerto Rico, las cuales serán referidas a la Junta Examinadora;** (4)

someter para su adopción por la Junta Examinadora, un Código de Ética Profesional que regirá la conducta de los optómetras, entre otros. Íd., sec. 545b (énfasis suplido). Asimismo, se le otorgó facultad de solicitar ante los tribunales las correspondientes órdenes de interdicto, auto inhibitorio o cualquier remedio a su disposición para exigir el cese y desista de actos o prácticas contrarias a los propósitos de esta Ley. Íd., sec. 545j.

En adición, **al Colegio se le confirieron amplios deberes y derechos que están íntimamente imbricados con proteger la salud pública y resaltar la ética en la profesión**. Entre estos se encuentran:

[. . .]

b) **Contribuir a la permanencia, al progreso y adelanto de la profesión de optometría en Puerto Rico**, así como de aquellas artes e industrias relacionadas con la misma, y publicar y circular periódicos, revistas, libros, artículos y material impreso, así como la preparación o el auspicio y la presentación de programas acerca de la optometría, utilizando cualquiera de los medios de comunicación existentes.

c) **Orientar a la ciudadanía acerca de la profesión de optometría.**

d) Rendir los informes y consultas que el Gobierno le solicite, y cooperar con los gobiernos municipales, estatal y federal y sus agencias, instrumentalidades públicas y organismos reguladores en todo cuanto sea de interés mutuo o de beneficio al bienestar general del pueblo y que esté relacionado con la optometría.

[. . .]

h) Gestionar con las universidades acreditadas el ofrecimiento de programas de estudio de un curso pre-optométrico, así como cursos de repaso y educación continuada para los

miembros. Tales cursos deberán contar con el aval de la Junta Examinadora.

[. . .]

j) **Propulsar legislación o gestionar enmiendas a la legislación que reglamenta la admisión y la práctica de la profesión de optometría en Puerto Rico y velar porque se mantenga a la par con el progreso y desarrollo optométrico que dicha Ley contiene sobre la profesión de optometría y su práctica.**

k) Mantener un alto nivel de profesionalismo y de ética profesional entre los colegiados, y denunciar la práctica desleal de la profesión de optometría. Íd., sec. 545k (Énfasis suplido).

**II.**

Lo que sostuve en mi *Opinión disidente* en Colegio de Veterinarios de Puerto Rico v. Veterinario Express, 2022 TSPR 113, 210 DPR __ (2022) (Opinión Disidente, J. Oronoz Rodríguez, pág. 18) aplica perfectamente al presente caso:

[E]l interés del Estado con la colegiación compulsoria de los médicos veterinarios **no se limita a regular la profesión para mantener estándares altos. El Estado busca proteger la salud del Pueblo** [. . .] aprovechando los avances tecnológicos para el desarrollo de la profesión. (Énfasis suplido).

En esta misma línea de pensamiento, es imperativo recalcar que "la colegiación compulsoria de las distintas profesiones se debe evaluar caso a caso y **no puede tratarse de manera homogénea**". Íd., pág. 10 (énfasis suplido).

De un análisis exhaustivo del expediente ante nos, se desprende con meridiana claridad que la Junta Examinadora está dotada de facultades y deberes dirigidos **únicamente a la regulación de la práctica profesional de la optometría.** Lo anterior denota que, aunque inciden indirectamente, **no**

**están enfocados específicamente en salvaguardar la salud**
**pública de la ciudadanía**; especialmente en comparación con
las facultades y deberes conferidos al Colegio.

Por ello, se hace ineludible resaltar que la labor que
realizan las y los optómetras no solamente se manifiesta en
el cuidado de la salud visual. En ese aspecto,

> [m]ediante un examen de retina, llevado a cabo por
> un Optómetra, se pueden identificar varias
> condiciones médicas, entre ellas, pero sin
> limitarse a: presión arterial; glaucoma; diabetes;
> tumores del nervio óptico; hemorragias; atrofias
> de la córnea; disolución [del] iris (que causa
> ceguera); doble visión; enfermedades de la
> tiroide[s]; artritis; la necesidad de ajustar las
> dosis de medicamentos debido a daños en la visión,
> entre muchas otras".[1]

Los demandantes apelados enfatizan que el Colegio no
tiene facultad para expedir o revocar licencias y tampoco
tiene poderes adjudicativos en proceso éticos, mas la Junta
Examinadora sí. [2] Arguyeron que, tanto el Colegio de
Optómetras como el Colegio de Mecánicos Automotrices
—examinado por este Tribunal en Rodríguez Casillas v.
Colegio de Técnicos y Mecánicos, supra— comparten funciones
similares, por lo que adujeron que no requieren de una
colegiación compulsoria para su cumplimiento. [3] Alegan,
además, que no existe si quiera un interés apremiante que
justifique la lesión de su derecho constitucional.[4]

Por su parte, el Estado advirtió que en el presente
caso debe evaluarse a la luz de la crisis fiscal, la

---

[1] Apéndice del *certiorari*, pág. 178.
[2] Véase: Alegato de la parte apelada, pág. 6.
[3] Íd., pág. 9.
[4] Íd.

incapacidad presupuestaria y administrativa de la Junta, sus funciones y deberes, para así analizar **si existe un mecanismo menos oneroso, viable y efectivo**, que pueda sustituir el andamiaje estatuido por la Asamblea Legislativa en aras de salvaguardar **los intereses apremiantes** que están presentes en este caso.[5]

A su vez, el Colegio exaltó que el rol que ejerce la profesión de la optometría es claramente distinguible de otras profesiones.[6] Asimismo, destacó que, en el transcurso de un año y diez meses, ha realizado 86 investigaciones relacionadas a la práctica de la optometría.[7] En adición, por medio de declaraciones juradas, aseveró que aparte de realizar activamente estas investigaciones, **el Colegio realiza un sinnúmero de actividades y colaboraciones enfocadas directamente al cuidado primario de la salud visual de los puertorriqueños y las puertorriqueñas**. Entre estas se encuentran: (1) la realización de acuerdos colaborativos con entidades, organizaciones sin fines de lucro y agencias de gobierno; (2) participación activa en foros y/o ponencias ante la Legislatura en aquellos temas relacionados con la práctica de la Optometría; (3) ofrecimiento de actividades de ayuda y orientación a la comunidad, que incluyen clínicas visuales alrededor de la isla; (4) entrega de suministros y artículos de higiene luego

---

[5] Véase: Alegato del Estado, pág. 28.
[6] Véase: Apelación de Sentencia, pág. 12.
[7] Íd., pág. 13.

del Huracán María y los terremotos ocurridos en enero de 2020; (5) sostener un programa de radio con el propósito de mantener informada a la población sobre la salud visual; (6) orientación a la comunidad sobre el uso de termómetros infrarrojos utilizados durante la pandemia del Covid-19; (7) donación de equipo necesario para habilitar un cuarto de examen de la vista en el Municipio de Vieques, luego de que el Colegio adviniera en conocimiento de que el municipio no tenía acceso a una clínica que proveyera cuidado visual; (8) colaboración con la *American Optometrics Association* para ayudar a afianzar la relación entre el profesional de la optometría y el o la paciente de diabetes; (9) participación activa al presentar proyectos y asesorar a la Asamblea Legislativa en la implantación de medidas dirigidas al cuidado primario de la salud visual; (10) la intervención del Colegio logró que se le otorgara a las y los optómetras la exención contributiva otorgada por el *Código de Incentivos de Puerto Rico*, Ley 60-2019, 13 LPRA secs. 45001-48599, dirigida específicamente a evitar el éxodo de médicos en Puerto Rico, entre otras aportaciones significativas al cuidado de la salud.[8]

No puede albergarse duda de que, la función que ejerce el Colegio ante las facultades y deberes que le fueron otorgados, es mucho más abarcadora que la realizada por la Junta Examinadora. Como destaqué inicialmente, la Junta

---

[8] Véase: Apéndice de *certiorari*, págs. 213-220.

Examinadora se limita a ejercer un rol regulador de la práctica de la Optometría que, si bien incide en la salud pública del Pueblo, no es suficiente para adelantar y proteger este interés hegemónico. Por ello, concluir categóricamente que la Junta Examinadora es el medio menos oneroso para lograr la consecución de la totalidad de los intereses estatales aquí implicados es completamente errado. **Esto pues, supone ignorar que, en la edificación de estos cuerpos reguladores, la Legislatura tenía como propósito atender únicamente la regulación de la profesión de la optometría.** Lo anterior resulta insuficiente pues ante nos se encuentra **otro interés apremiante; incluso uno de mayor jerarquía.**

De frente a esta realidad, es razonable concluir que, ante un planteamiento de viabilidad y efectividad de la medida menos onerosa para adelantar el interés apremiante del Estado en regular la profesión de la optometría, la Junta Examinadora constituye tal medida. Ahora bien, lo anterior no es de aplicación al segundo interés que tenemos ante nos: la salud pública del país. Dicho de otra manera, invalidar la legislación impugnada al ignorar este segundo interés supone que **"la Junta examinadora es el medio menos oneroso para cumplir con un interés para el que no está habilitada"**. Colegio de Veterinarios de Puerto Rico v. Veterinario Express, 2022 TSPR 113, 210 DPR __ (2022) (Opinión Disidente, J. Oronoz Rodríguez, pág. 17) (énfasis suplido).

La decisión a la que se llega en este caso incidirá directamente sobre la recaudación de ingresos que lleva a cabo el Colegio por medio de la colegiación compulsoria. Esto, sin duda alguna, pone en peligro la labor encomiable y neurálgica que cumple el Colegio, y consecuentemente, amenaza la protección de la salud pública que adelanta esta entidad. Por ello, la mayoría no solo parte de la premisa equivocada de que la Junta Examinadora es el medio menos oneroso para adelantar los intereses apremiantes del Estado ante la carencia de facultades y deberes expuestas anteriormente, sino que va más allá al razonar que el Colegio podrá continuar ejecutando las facultades y complementar a la Junta Examinadora. En esencia, el consenso mayoritario se abstrae completamente de la realidad y expone a la ciudadanía a sufrir las consecuencias.

Ante la innegable encomienda y ejecución del Colegio, la falta de recursos económicos como cuestión de hecho que sufren las Juntas Examinadoras y la carencia de facultades y deberes dirigidos a proteger expresamente el cuidado primario de la salud visual otorgados a la Junta Examinadora de Optómetras, estimo que la colegiación compulsoria aquí impugnada sobrevive la aplicación del escrutinio estricto. **Es decir, el andamiaje erigido por la Asamblea Legislativa constituye la medida menos onerosa, efectiva y viable para salvaguardar la salud pública.**

**III.**

Una vez más se aplica un análisis mecánico, generalizado

y homogéneo sin tener en cuenta las circunstancias particulares que giran en torno a las distintas profesiones. **Por segunda vez, se ignora que la salud pública en sí misma constituye un interés apremiante que requiere ser examinado a la luz del escrutinio estricto más allá de las facultades y deberes dirigidos a regular la profesión.**[9] El resultado de esta decisión incidirá de manera nefasta no solamente en la salud visual de la ciudadanía, sino en el conjunto de enfermedades y condiciones que las y los optómetras pueden detectar, al poner en riesgo la labor realizada por el Colegio en pro de la salud pública y la exaltación del honor y la dignidad de la profesión de la optometría.

Por los fundamentos esbozados, disiento enérgicamente del curso de acción mayoritario.


                                        Maite D. Oronoz Rodríguez
                                            Jueza Presidenta


---

[9] Véase Colegio de Veterinarios de Puerto Rico v. Veterinario Express, 2022 TSPR 113, 210 DPR __ (2022) (Sentencia).